**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

| | |
|---|---|
| TIAUNA JACKSON, <br><br> Plaintiff, <br><br> vs. <br><br> LAW SCHOOL ADMISSION COUNCIL, INC.; DARREN KETTLES; and VICTORIA WHITESELL, <br><br> Defendants. | 4:26-cv-04066 <br><br><br> **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

**COME NOW** the Defendants, Law School Admission Council, Inc. ("LSAC"), Darren Kettles, and Victoria Whitesell, by and through their undersigned counsel of record, and respectfully submit this Reply Brief to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, filed July 2, 2026, and in support of their Motion to Dismiss Plaintiff's Amended Complaint, filed June 11, 2026. As such, Defendants state and allege as follows:

## I.     PERSONAL JURISDICTION OVER KETTLES AND WHITESELL

Plaintiff argues in her Memorandum in Opposition to Defendants' Motion to Dismiss ("Response") (Doc. 21) that this Court has personal jurisdiction over Darren Kettles and Victoria Whitesell, the two individually named defendants in Plaintiff's First Amended Complaint ("Complaint"), under an "intentional-tort effects test." Kettles is an LSAC volunteer, and Whitesell is an LSAC employee. Doc. 5, ¶¶ 8-9; Doc. 19, ¶ 3; Doc. 20, ¶ 3. Plaintiff mistakenly interprets the Kettles and Whitesell Affidavits to mean that Kettles and Whitesell are arguing that this Court lacks personal jurisdiction over them because they lack physical presence in South Dakota. That is not the case. Defendants submit that this Court lacks personal jurisdiction over Kettles and

1

Whitesell under the five-factor test set forth by the Eighth Circuit.  Specifically, Defendants argue that Kettles and Whitesell both have insufficient minimum contacts with the forum to establish personal jurisdiction over them here. In support of that, the Affidavits of Kettles and Whitesell emphasis how little they have ever interacted with the State of South Dakota, which is essentially, none at all.

The only nexus in this case between Kettles/Whitesell, and the State of South Dakota, is the Plaintiff. The Charge Letter that Kettles allegedly signed was directed to the Plaintiff. Doc. 5, ¶ 28. Note that the Complaint does not allege that Plaintiff received the letter in South Dakota, nor that the letter was directed at her in South Dakota. The Plaintiff also fails to allege that she was a South Dakota resident at the time she received the letter, or that she was living here at that time. Further, Plaintiff's address is redacted in the Letter, found at Exhibit 1 to her Complaint. So, Plaintiff has not even alleged that the Letter was directed at the forum state – she has only alleged that the Letter was directed at Plaintiff, who was "enrolled as a first-year law student at the University of South Dakota Knudson School of Law" at the time of the events described in her Complaint. *See* Doc. 5, ¶ 6. This alone does not establish a connection between the Letter and South Dakota.

As for Whitesell, Plaintiff alleges that the emails Whitesell exchanged with Plaintiff were directed to the Plaintiff. *See* Exhibit 3 to Doc. 5. Plaintiff does not allege that she was in South Dakota at the time she received the emails, nor does she allege that she was in South Dakota when she sent the emails. Plaintiff further alleges that Whitesell reviewed the "case package," but does not allege that this review happened in South Dakota. Doc. 5, ¶ 27. Plaintiff alleges that Whitesell also issued a Dismissal Letter to Plaintiff saying that the Charge was dismissed. Doc. 5, ¶ 34. But Plaintiff fails to allege this letter was written in South Dakota, directed to South Dakota, that

Plaintiff was physically present in South Dakota when she received the letter, or that Plaintiff resided in South Dakota at the time that she received the letter. Again, Plaintiff's address is redacted on the letter found at Exhibit 2 to her Complaint. Plaintiff has thus failed to allege that any of Whitesell's acts were directed at the forum state.

In *Digi-Tel*, the Eighth Circuit Court of Appeals found that "multiple letters and faxes" sent to the forum state in connection with a contract may be used to support the exercise of personal jurisdiction, but do not themselves establish jurisdiction. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d 519, 523 (8th Cir. 1996); *see also Lewis & Clark Reg'l Water Sys., Inc. v. Carstensen Contracting, Inc*., 355 F. Supp. 3d 880, 891 (D.S.D. 2018) (holding that although emails, phone calls, and mailings may count towards the required minimum contacts, they do not establish personal jurisdiction by themselves). In the *Digi-Tel* and *Lewis & Clark* cases, there were even the additions of several telephone calls to the forum state, which is not the case here, and still, the respective courts concluded that those contacts do not create a "substantial connection" to the forum state to support personal jurisdiction. *Id.*

Here, Plaintiff alleges that Kettles signed **one** letter. "In assessing the defendant's reasonable anticipation, there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 522 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). It offends the traditional notions of fair play and substantial justice to say that in signing one letter, Kettles should reasonably anticipate that he could be haled into court in South Dakota. Further, it simply cannot be said that Kettles committed some act which purposefully availed him of the privileges of conducting activities with South Dakota. "Jurisdiction is proper where the contacts proximately result from actions by the defendant itself that create a substantial connection

3

with the forum State." *Id.* The Complaint is devoid of any allegations that show Kettles established *any* connection with the State of South Dakota, nonetheless a "substantial connection" here.

As for Whitesell, the Complaint alleges that she exchanged approximately six emails with the Plaintiff, sent one letter to the Plaintiff, and reviewed the "case package." But these allegations are insufficient to show Whitesell had sufficient minimum contacts with the forum state. Again, Plaintiff has failed to allege that any of these acts were committed in South Dakota or directed at South Dakota. Plaintiff has only alleged that she was enrolled in the USD School of Law at the time. These allegations, without more, fail to establish any connection between Whitesell and South Dakota, nonetheless a "substantial connection."

Further, Plaintiff has failed to sufficiently allege that Whitesell and Kettles "purposefully avail[ed] [themselves] of the privilege of conducting activities within forum State, thus invoking benefits and protections of its laws." *Id.* at 522. Whitesell and Kettles did not purposefully or intentionally interact with South Dakota so as to create some level of foreseeability of being haled into court there. The Complaint alleges that Kettles is the Chair of LSAC's Subcommittee on Misconduct and Irregularities in the Admission Process, and that in that capacity, he signed the Letter. Doc. 5, ¶¶ 8, 28. These facts do not establish that Kettles "purposely directed" his activities at South Dakota. Plaintiff does not allege that Kettles sought Plaintiff out and sent a letter to her; Plaintiff alleges that LSAC received a referral for misconduct or irregularity. Doc. 5, ¶ 23. There was no *intention* on Kettles' part to interact with South Dakota; the Letter being sent to an individual who allegedly has a connection with South Dakota was completely fortuitous or random. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Lewis & Clark*, 355 F. Supp. 3d

4

at 890 (quoting *Burger King*, 471 U.S. at 475). This random and fortuitous contact with Plaintiff, who is allegedly affiliated with South Dakota, is not enough to establish sufficient minimum contacts.

As to Whitesell, the allegations are that she exchanged approximately six emails with the Plaintiff, sent one letter to the Plaintiff, and reviewed the "case package." Here, too, the Complaint fails to allege, and cannot allege, that Whitesell intentionally interacted with South Dakota through these acts. The Complaint alleges that LSAC received a referral from the USD School of Law, and that LSAC then processed that referral, according to LSAC's "Rules." Doc. 5, ¶¶ 23, 27, 35. The Complaint that does not allege that Whitesell chose to handle Plaintiff's referral or selected to handle it. Nor does the Complaint allege that Whitesell sought Plaintiff out to communicate with her. Whitesell's interactions with the Plaintiff, like Kettles', were random and fortuitous due to the referral which by chance, came from South Dakota's law school. Random and fortuitous contacts are insufficient to establish sufficient minimum contacts for personal jurisdiction. *Lewis & Clark*, 355 F. Supp. 3d at 890. Therefore, Whitesell's random and fortuitous contacts with Plaintiff, who is alleged affiliated with South Dakota, are not enough to establish sufficient minimum contacts.

Plaintiff relies on *Whaley v. Esebag*, 946 F.3d 447 (8th Cir. 2020) for the contention that jurisdiction lies "where the nonresident committed an intentional tort whose harm was felt primarily within the forum." Doc. 21, pg. 5. Plaintiff argues that this test applies because her claims against the individually named defendants include intentional torts. *Id.* Against Kettles, Plaintiff brings claims of Libel, Intentional Infliction of Emotional Distress, and Abuse of Process.[1] *See*

---

[1] However, in her Response, Plaintiff requests that the Abuse of Process claim be dismissed without prejudice. Doc. 21, pg. 1.

Doc. 5. Against Whitesell, Plaintiff brings claims of Libel, Intentional Infliction of Emotional Distress, Negligent Misrepresentation, Fraud, and Fraudulent Misrepresentation. *Id.*

Negligent Misrepresentation would sound in negligence and not in intentional tort. But for the remainder of the aforementioned claims, it is relevant that for claims sounding in intentional tort, the Eighth Circuit evaluates specific personal jurisdiction using the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, it was found, under the "effects test," that it was proper for a court in California to exercise personal jurisdiction over two Florida newspapermen in a libel action arising out of their intentional conduct in Florida which was allegedly calculated to cause injuries to the plaintiff in California, and where the newspapermen knowingly caused injury in California. 465 U.S. at 788-790. As previously explained, the facts alleged in the Complaint do not support that Whitesell/Kettles intentionally directed any conduct towards the Plaintiff, and do not support that Whitesell/Kettles knowingly caused an injury in South Dakota.

But regardless, the Supreme Court has since narrowed its holding in *Calder* to require two related aspects of a defendant's relationship with the forum that must be present to establish minimum contacts: the relationship must arise out of contacts the defendant himself created with the forum state; and the court will look to the defendant's contacts and conduct with the forum state *itself*, not the defendant's contacts with persons who reside there. *Whaley*, 946 F.3d at 451 (referencing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (emphasis in original). As previously discussed, the contacts Whitesell/Kettles had with South Dakota, if you can even call them that, were not created by Whitesell/Kettles themselves. Whitesell and Kettles were processing a referral that came from South Dakota's law school pursuant to their roles as an LSAC employee and an LSAC volunteer. In other words, they were made or forced to interact with the South Dakota referral. Further, as previously discussed, and as addressed in Defendants' Brief in Support of

6

Motion to Dismiss, Whitesell/Kettles had no contacts/conduct with South Dakota itself – only with a person who allegedly resides in South Dakota: Plaintiff. This is all the Complaint alleges, and all that it can allege.

In her Response, Plaintiff further argues that Kettles and Whitesell acting as LSAC employees does not shield them from liability in this matter. Doc. 21, pg. 6. Defendants strongly disagree. Kettles (volunteer) and Whitesell (employee)'s contacts with South Dakota are not to be judged according to LSAC's activities there. *See Calder*, 465 U.S. at 790. In her Response, Plaintiff alleges that the "intentional conduct" that Kettles and Whitesell directed at South Dakota was them participating in and adjudicating USD School of Law's referral concerning an alleged South Dakota resident. Doc. 21, pg. 6. As previously discussed, nothing about Kettles/Whitesell's handling of Plaintiff's referral was "intentional," nor "intentionally" directed at South Dakota. The Complaint does not allege as much. The Complaint does not allege that Kettles/Whitesell had an option as to whether to handle Plaintiff's referral. The Complaint does not allege, and cannot allege, that Kettles/Whitesell deliberately interacted with Plaintiff, choose to interact with Plaintiff, or had any say whatsoever in whether they had to interact with Plaintiff.

Plaintiff has failed to plead sufficient facts to establish that either Whitesell or Kettles had sufficient minimum contacts with the State of South Dakota so as to warrant haling either of them into court here. The exercise of personal jurisdiction in South Dakota over Kettles/Whitesell would offend the traditional notions of fair play and substantial justice, and violate Kettles/Whitesell's due process rights. As such, all claims against them should be dismissed. Additionally, amendment to the Complaint and/or jurisdictional discovery would be futile. Plaintiff can allege no set of facts that support personal jurisdiction over Whitesell and Kettles in South Dakota, because the facts

simply aren't there. Plaintiff's request to amend and her request to engage in jurisdictional discovery should be denied.

## II.    PLAINTIFF'S ADA CLAIM

Plaintiff dedicates much of her Response to Count 1, her claim under the Americans with Disabilities Act ("ADA"), which is against LSAC only. Plaintiff starts out by stating that her claim arises under 42 U.S.C. § 12182(b)(2)(A)(i) and (ii) and not 42 U.S.C. § 12189. However, Plaintiff did not specify this in her Complaint, further evidencing how Plaintiff has failed to state an adequate claim for relief under the ADA. Plaintiff also did not allege a violation of the "eligibility-criteria" provision. Nor did Plaintiff allege "modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" as to the "reasonable-modification" provision.

Plaintiff, for the first time in her Response, alleges that her "limitations" "impair her capacity to read, process, and prepare a written response to a formal misconduct charge within the fixed, non-extendable thirty-day deadline the Rules impose, LSAC Rules § 6(c)." Doc. 21, pg. 13. Such an allegation was not pled in the Plaintiff's Complaint and should not be taken into consideration in ruling on the present Motion. Notwithstanding the foregoing, Defendants argue that such a statement is disingenuous. Plaintiff's own Complaint alleges that the Charge Letter was issued on April 4, 2024. Doc. 5, ¶ 28. The Letter requests a response or request for telephonic hearing within 30 days of receipt of the Letter. Exhibit 1 to Complaint. Just one day later – well within the 30-day response window – Plaintiff did so respond, as well as request a telephonic hearing, without first requesting any sort of accommodation because of disability. Exhibit 3 to Complaint. Then, on April 9, 2024 – just five days after the initial Charge Letter was sent – LSAC sent a letter to Plaintiff informing her that the USD School of Law had withdrawn the referral and

8

that the charge was dismissed. Exhibit 2 to Complaint. Simply put, Plaintiff's response to the charge was effective. No limitation or disability she may have impaired her ability to respond or engage with the charge, as evidenced by her effective response and the charge's speedy dismissal. Plaintiff suffered no harm or injury in fact. Plaintiff has not shown that any disability she may have impaired her ability to adequately respond to the Charge Letter.

As previously argued in Defendants' Brief in Support of Motion to Dismiss, Plaintiff lacks Article III standing as to her ADA Claim. To have standing to sue in federal court, a plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339. Put differently, the deprivation of a right created by statute must be accompanied by some concrete interest that is affected by the deprivation. *Id.* at 341.

Here, Plaintiff has suffered no actual or threatened injury for the alleged misconduct of LSAC. Plaintiff alleges a bare statutory violation, but not a concrete interest that is affected by the alleged deprivation of that right. Plaintiff alleges that she had to disclose the LSAC Charge on her transfer applications to other law schools and must disclose the Charge on bar applications. Doc. 5, ¶¶ 38-39. These circumstances do not amount to an injury in fact. Plaintiff does not allege that having to disclose the LSAC Charge on her transfer applications prevented her from obtaining admission at any school. In fact, Plaintiff has now graduated from law school. Furthermore, Plaintiff has not alleged that having to disclose the LSAC Charge will prevent her or has prevented

her from being admitted to any state bar.[2] Plaintiff alleges "reputational and professional injury" for the first time in her Response, but she has not pled facts in her Complaint about these alleged injuries, any ongoing injury, or any concrete interest that has been affected by the alleged deprivation.

Further, Plaintiff seeks attorney's fees and injunctive relief as remedies for LSAC's alleged violation of the ADA. Doc. 5, ¶ 48. Plaintiff is *pro se* in this matter and will have no attorney's fees, so such a request for attorney's fees is preposterous. *See Smith v. S. Dakota*, No. CIV. 11-4001-KES, 2012 WL 1038629, at *7 (D.S.D. Mar. 27, 2012) (finding that the plaintiff, acting pro se, may not collect attorney's fees for any of his own time spent developing his case); *Davis v. Parratt*, 608 F.2d 717 (8th Cir. 1979) (finding that the inmate plaintiff, who was a trained paralegal, was not entitled to attorney's fees under 42 U.S.C. § 1988); *Kay v. Ehrler*, 900 F.2d 967, 969-972 (6th Cir. 1990), aff'd, 499 U.S. 432 (1991) (holding that the district court correctly denied plaintiff's request for an award of attorney's fees when the plaintiff was pro se, and despite the fact that plaintiff was an attorney).

Plaintiff has failed to state a claim for Violation of the Americans with Disabilities Act as against LSAC and Count 1 should be dismissed with prejudice. Additionally, amendment to the Complaint would be futile. Plaintiff cannot allege any set of facts that support an ADA Violation on the part of LSAC, because the facts simply are not there. Plaintiff's request to amend should be denied.

---

[2] *See Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK, 2026 WL 1283874, at *2 (D.S.D. May 11, 2026) (this Court finding that being forced to disclose the LSAC charge on future bar applications is "pure speculation and only a predication of what is alleged to be a certain outcome. No such recovery may be made on the basis of such pure speculation of what the future holds.").

### III.    PLAINTIFF'S LIBEL CLAIM

Falsity is a material element of a claim for libel. *See* SDCL § 20-11-3. Plaintiff's Claim for Libel in Count 2 of her Complaint fails to adequately allege falsity. The Complaint alleges that "The Charge Letter accused Plaintiff of professional dishonesty." Doc. 5, ¶ 50. The Complaint also alleges, "This accusation was false. The Howard University application cited by the Charge Letter disclosed the enrollment the charge accused Plaintiff of concealing." *Id.* at ¶ 51. The Complaint fails to specifically identify which statement in the Letter Plaintiff deems false, or which statement she deems to be an accusation of "professional dishonesty." Presumably, the statement Plaintiff takes issue with is: "[Y]our application to University of South Dakota Knudson School of Law for the fall 2023 term may have included information that is false, inconsistent or misleading with regard to your prior law school matriculation and omitted information that may result in a false of misleading conclusion." *Id.* at ¶ 28; Exhibit 1 to Complaint.

Plaintiff has failed to directly allege that this statement was untrue. Plaintiff has not alleged that she *did* in fact disclose her prior Northwestern California University School of Law enrollment on her original USD Law application. Plaintiff has only alleged that she did disclose that prior enrollment on her application to Howard. Doc. 5, ¶ 29. The Charge Letter does not concern Howard. What Plaintiff disclosed to Howard is irrelevant for the purposes of her application to USD and has no bearing on USD Law's referral to LSAC. Plaintiff's summation that the Letter accused her of "professional dishonesty" does not actually identify a false or untrue statement.[3]

---

[3] *See Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK, 2026 WL 1283874, at *2 (D.S.D. May 11, 2026) (this Court stating that, "It is true that the plaintiff answered 'no' on her application for admission as to whether she had ever attended any law school… The fact also is that she had corrected those matters and the correction was in her file at the law school.").

And, the actual statement Plaintiff has issue with was not false. The Complaint does not allege as much. For this reason alone, Plaintiff's libel claim fails.

Additionally, evidence submitted by the Plaintiff supports the notion that she did **not** in fact disclose her prior law school enrollment on her application to USD. An email from Ms. Whitesell to Plaintiff states that the USD School of Law requested to withdraw its referral to LSAC because "they received your letter of good standing and addendum to your application." Exhibit 3 to Complaint. The referral being withdrawn after Plaintiff submitted an addendum to her application implies that Plaintiff addended the application to include disclosure of the Northwestern California University School of Law enrollment. This would necessarily lead to the conclusion that when she initially applied, Plaintiff did not disclose said prior enrollment.

For the first time in her Response, Plaintiff also now takes issue with the statement in the Letter that Plaintiff applied to USD as a first-time student, not a transfer-student. In her Complaint, Plaintiff did not allege that this statement is false. Plaintiff did not allege that she applied as a transfer student. Plaintiff did not allege that she did not apply as a first-time student. Yet Plaintiff argues in her Response that it was OK that she applied as a first-time student, because "a person who completed no term has no law-school coursework or credits to transfer." Doc. 21, pg. 14. Plaintiff's argument defies logic. A first-time student designation states, plainly and on its face, that it is for students who are going to law school for the 'first-time.' Plaintiff repeatedly through her pleadings admits that she attended law school elsewhere, before attending law school at USD. *See, e.g.,* Exhibit 4 to Complaint. Plaintiff was not a first-time law student at the time of her application to USD, and her Complaint does not so allege. As such, this statement is also not false.

SDCL § 20-11-3 defines Libel as: "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to

12

hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Plaintiff did not allege that a false and unprivileged communication exposed her to hatred, contempt, ridicule, obloquy; nor that it caused her to be shunned or avoided; nor that it had a tendency to injure her in her occupation. *See broadly,* Doc. 5. Plaintiff failed to plead all the necessary elements of libel.

In fact, Plaintiff has failed to plead libel damages of any kind. It is unclear from the Complaint whether she seeks relief for any damages. The only call for damages in Count 3 is: "Plaintiff is entitled to presumed damages under SDCL § 20-11-3." It is unclear what Plaintiff means by this, as statutory damages are not offered under § 20-11-3. § 20-11-3 offers a few options for libel per se in which harm can be presumed, such as a statement "which exposes any person to hatred," but statutory damages are not offered, and damage still needs to be alleged. "It is well settled that if an article is not libelous per se special damages resulting from the publication must be particularly alleged." *Brodsky v. J. Pub. Co.,* 42 N.W.2d 855, 856 (S.D. 1950). "Special damages are the natural and proximate, but not the necessary, result of the wrong complained of and do not follow by implication of law upon proof of the publication of the defamatory words." *Id.* Here, Plaintiff has not pled libel per se. Also, Plaintiff has pled no damages for libel, let alone pled them with particularity. So again, Count 2 contains insufficient allegations to plausibly plead a claim for Libel.

For these reasons, and the reasons stated in Defendants' Brief in Support of Motion to Dismiss, Plaintiff's Count 2 should be dismissed, with prejudice. Plaintiff has not pled sufficient facts, and cannot plead sufficient facts, to support a claim for Libel.

## IV.    PLAINTIFF'S NEGLIGENCE CLAIMS

Plaintiff has not identified any cognizable duty on the part of LSAC that was breached as to Plaintiff. Her Complaint alleges that "LSAC owed Plaintiff a duty of care," (Doc. 5, ¶ 55), and her Response alleges that LSAC owed Plaintiff a "duty of reasonable care" because it was foreseeable that the Charge Letter would injure Plaintiff (Doc. 21, pg. 17). Defendants do not believe Plaintiff has sufficiently pled the duty element of the negligence claims, and the "duty of reasonable care" is extremely broad and undefined. In fact, Plaintiff has alleged that the relationship between LSAC and Plaintiff is that through the Credential Assembly Service product, which very well may be governed by contract, not tort.  Plaintiff's allegations arise, if at all, from LSAC's policies, contractual services, or administrative procedures/rules – not from an independent common law duty sounding in tort.

Plaintiff also does not adequately allege that LSAC breached any alleged duty owed to her. Plaintiff does not allege that LSAC failed to follow its internal Rules. Plaintiff does not allege that LSAC violated any agreement or contract with Plaintiff. Plaintiff imputes her own ideas about how she believes the process should have been handled, onto LSAC, as if she feels these things should be required in the M&I review process – such as having an attorney review the charge, or that there should be a complaint process following M&I charges. Doc. 5, ¶ 56. But these things are not actual requirements of LSAC, and the Complaint does not allege as such.

Defendant LSAC committed no negligence here. Plaintiff's allegations establish that LSAC handled USD Law's referral concerning Plaintiff in due course and pursuant to its own policies and Rules, and nothing more. Plaintiff seeks redress for her disgruntlement towards USD,

14

and for her own mistake on her initial USD Law application.[4] The law does not provide such a remedy here, and Plaintiff's claims against LSAC in this regard are misguided. Counts 3 and 4 should be dismissed, with prejudice.

## V.    PLAINTIFF'S IIED CLAIM

Defendants rest on their arguments in their Brief in Support of Motion to Dismiss as to Count 5, Intentional Infliction of Emotional Distress, and assert that Count 5 should be dismissed with prejudice. Any amendment to the Complaint would be futile because Plaintiff cannot allege any set of facts which would sufficiently support any assertion that the Defendants committed extreme and outrageous conduct, because no such facts exist. No facts exist as to intent to cause severe emotional distress or reckless disregard of the high probability of causing severe emotion distress, either. As such, Plaintiff's request to amend her Complaint should be denied.

## VI.    PLAINTIFF'S ABUSE OF PROCESS CLAIM

Defendants rest on their arguments in their Brief in Support of Motion to Dismiss as to Count 6, Abuse of Process, and assert that Count 6 should be dismissed *with* prejudice as opposed to without prejudice, as Plaintiff requests. Plaintiff has not, and cannot, allege any set of facts which would establish an Abuse of Process claim here because there was no judicial or legal process involved.

## VII.    PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM

Plaintiff alleges that the Charge interfered with Plaintiff's relationships with law schools, bar admission authorities, and future employers. Doc. 5, ¶ 65. No valid business relationship or

---

[4] *See Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK, 2026 WL 1283874, at *2 (D.S.D. May 11, 2026) (this Court finding that Plaintiff's Complaint in a factually similar case was "full of gross exaggerations, wild claims of conspiracy, and reeking in revenge and bad faith to abuse the judicial process.").

expectancy exists with any of these entities, and Plaintiff does not allege as such. Plaintiff does not allege that she had to disclose the dismissed Charge on a transfer student application and then did not get into that school. In fact, Plaintiff has now graduated from law school. Furthermore, Plaintiff has not alleged that having to disclose the dismissed Charge will prevent her or has prevented her from being admitted to any state bar. And, Plaintiff has not alleged that the dismissed Charge will prevent her or has prevented her from obtaining any employment. Plaintiff alleges interference with speculative, future "business" relations and nothing more.

She alleges for the first time in this Response that she had "adverse consequences" following a dismissed Charge disclosure at the University of New Hampshire and the University of Arizona. Doc. 21, pg. 21. This alleged fact cannot be considered on this Motion, as this alleged fact was not pled in the Complaint. However, even if this had been properly alleged, Plaintiff has still failed to allege a plausible claim for tortious interference because she fails to plead sufficient facts regarding other elements of tortious interference, including intentional and unjustified interference, and damages. *See Tibke v, McDougall*, 479 N.W.2d 898, 908 (S.D. 1992) (reciting the elements of a claim for tortious interference with business relations). In her Complaint, Plaintiff alleges "her ability to transfer was impaired and she suffered professional harm" (Doc. 5, ¶ 65), but the facts as alleged do not support this. Further, Plaintiff alleges in her Complaint that LSAC's issuance of the charge interfered with her business relationships (*id.*), but she alleges no facts in support of this conclusory statement.

For these reasons, and the reasons stated in Defendants' Brief in Support of Motion to Dismiss, Count 7 should be dismissed, with prejudice, and Plaintiff's request to amend should be denied. LSAC did not intentionally interfere with any "business relationship" of the Plaintiff, was

16

just doing its job in following its rules and handling USD Law's M&I referral, and handled the referral appropriately.

## VIII.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM

Plaintiff alleges that Whitesell provided Plaintiff with a "false statement of fact" when Whitesell wrote in the Dismissal Letter that "[t]he charge will not be a part of your LSAC record[.]" A misunderstanding as to a statement, or ambiguity in a statement, does not mean that statement becomes a "false statement of fact." Plaintiff could've simply asked more follow-up questions if it was not clear to her what Whitesell mean by "LSAC record," or Plaintiff could've inquired further into whether she had a duty to disclose the charge moving forward. Plaintiff did not do either of these things. Instead, Plaintiff assumed Whitesell's statement was a misrepresentation and is assuming that misrepresentation will be her future harm. This does not amount to a claim for Negligent Misrepresentation.

For this reason, and the reasons stated in Defendants' Brief in Support of Motion to Dismiss, Count 8 should be dismissed, with prejudice, and Plaintiff's request to amend should be denied.

## IX.    PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM

Plaintiff fails to identify any terms of the alleged contract with LSAC, or the particular contractual provision allegedly breached. Instead, Count IX relies generally upon LSAC's internal Rules and procedures without identifying mandatory language creating a contractual obligation owed to Plaintiff. Doc. 5, ¶ 70. Plaintiff further fails to allege the existence of mutual consent by LSAC and Plaintiff to any alleged contract and fails to allege sufficient cause or consideration.

In her Response, Plaintiff doubles-down that the LSAC Rules created obligations between LSAC and Plaintiff. But there is no distinction in legal effect between an express contract and an

implied contract. "An implied contract is a true contract and must contain all the elements of an express contract. The distinction between them is in the way in which mutual assent is manifested. In an express contract the terms are stated by the parties. In an implied contract they are inferred from the circumstances." *St. John's First Lutheran Church in Milbank v. Storsteen*, 84 N.W.2d 725, 726 (S.D. 1957). Essential elements to the existence of a contract include parties' consent, and sufficient cause of consideration. *Behrens v. Wedmore*, 2005 SD 79, fn. 3, 698 N.W.2d 555, 582. Plaintiff failed to plead more than one essential element of a contract, and the fact that she is alleging the contract is implied as opposed to express does not negate the requirement that all elements need be pled.

For this reason, and the reasons stated in Defendants' Brief in Support of Motion to Dismiss, Count 9 should be dismissed with prejudice.

## X.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM

Plaintiff's Unjust Enrichment claim fails to plead all the proper and essential elements of unjust enrichment. Plaintiff fails to plead that LSAC's retention of the benefit (here, allegedly Plaintiff's payment of CAS fees) would be inequitable. Plaintiff has not alleged that she did not receive a service from LSAC in exchange for payment of her fees. She alleges that she did not *like* how LSAC performed their services, and more specifically, the one service of M&I referral handling. These facts do not support a contention that retention of the fees by LSAC is inequitable, even if Plaintiff had alleged the same. "Unjust enrichment contemplates an involuntary or nonconsensual transfer, unjustly enriching one party." *Johnson v. Larson*, 2010 SD 20, ¶ 8, 779 N.W.2d 412, 416. Here, Plaintiff does not allege that she non-consensually paid her CAS fees to LSAC. Nor does Plaintiff allege that she involuntarily paid the fees. Plaintiff's Complaint asserts facts that suggest Plaintiff paid CAS fees to LSAC and then received LSAC's services. LSAC was

18

thus not unjustly enriched because it performed services in exchange for Plaintiff's fees. LSAC's retention of the fees is fair, warranted, and expected.

For this reason, and the reasons stated in Defendants' Brief in Support of Motion to Dismiss, Count 10 should be dismissed with prejudice.

### XI.    PLAINTIFF'S DECEPTIVE TRADE PRACTICES CLAIM

Defendants rest on their arguments in their Brief in Support of Motion to Dismiss as to Count 11, Violation of South Dakota Deceptive Trade Practices Act as against LSAC and assert that Count 11 should be dismissed *with* prejudice as opposed to without prejudice, as Plaintiff requests. Plaintiff has not, and cannot, allege any set of facts which would establish a Deceptive Trade Practices Act violation here because there was no sale or advertisement of merchandise.

### XII.    PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT

Count 12 seeks declaratory judgment "declaring that the withdrawn charge does not reflect adversely on Plaintiff's character and fitness for bar admission." Doc. 5, ¶ 76. In their Brief in Support of Motion to Dismiss, Defendants challenge this request, arguing that Plaintiff has failed to allege an immediate and concrete controversy warranting relief. In her Response, Plaintiff argues that the request *is* immediate and concrete because Plaintiff was required to disclose the LSAC charge on her transfer applications to other law schools. This argument defies logic for a couple of reasons. First, a determination about the validity of the charge, or whether the charge remains a part of Plaintiff's LSAC record, has no bearing on her transfer applications at this point. Plaintiff has already applied; this application process is in the past. Additionally, Plaintiff has graduated from law school at this point, so not only is this issue in the past, but it will never come up again.

As to bar applications, any future disclosure obligation depends on uncertain events, including whether the bar admission authority requests information about the Charge. The Complaint has not alleged that it will. Plaintiff's claims regarding bar admission authorities are not ripe for declaratory judgment because no actual controversy exists. *See Gopher Oil Co. v. Bunker,* 84 F.3d 1047, 1051 (8th Cir. 1996), *amended* (June 21, 1996) (finding that declaratory judgment requests were not ripe when no actual controversy existed, and affirming dismissal of such requests).  No facts indicate an immediate threat of disclosure to a bar authority. The facts do not even indicate that Plaintiff has yet applied to any bar. For the first time in her Response, Plaintiff makes mention of the South Dakota bar but did not allege in her Complaint that she was actually applying to the South Dakota bar.

For these reasons, and the reasons stated in Defendants' Brief in Support of Motion to Dismiss, Count 12 should be dismissed with prejudice.

### XIII.   PLAINTIFF'S FRAUD CLAIMS

Defendants rest on their arguments in their Brief in Support of Motion to Dismiss as to Count 13, Fraud and Fraudulent Misrepresentation as against LSAC and Whitsell, and assert that Count 13 should be dismissed with prejudice. Plaintiff has failed to plead fraud with the particularity that Fed. R. Civ. Pro. 9(b) requires. Further, Plaintiff fails to allege sufficient facts to plausibly allege reliance, causation, or damages.

### XIV.   PLAINTIFF'S ANTITRUST CLAIM

Defendants rest on their arguments in their Brief in Support of Motion to Dismiss as to Count 14, Violation of South Dakota Antitrust Law as against LSAC, and assert that Count 14 should be dismissed *with* prejudice as opposed to without prejudice, as Plaintiff requests. Plaintiff

20

has not, and cannot, allege any set of facts which would establish a South Dakota Antitrust Law violation here because Plaintiff does not and cannot allege an antitrust injury.

## XV.   ISSUE/CLAIM PRECLUSION BARS PLAINTIFF'S CLAIMS

It came to the attention of Defendants, after their initial Motion to Dismiss had been filed, that Plaintiff's Complaint in a factually similar matter was dismissed, with prejudice. *See Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK, 2026 WL 1283874 (D.S.D. May 11, 2026). Because Plaintiff's factually similar claims in her lawsuit against USD were dismissed with prejudice, Defendants argue Plaintiff's claims in the present suit are barred by claim or issue preclusion.

"Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotations omitted). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.*

Rule 201(c) of the Federal Rules of Evidence states that, "The court… must take judicial notice if a party requests it and the court is supplied with the necessary information." Adjudicative facts, or facts that have been developed in a particular case, may be judicially noticed *sua sponte* or at a party's request where the fact is not subject to reasonable dispute because it is generally known within the court's jurisdiction, or can be accurately and readily determined from sources

21

whose accuracy cannot reasonably be questioned. *United States v. Ward*, No. 5:22-CR-50073-KES-1, 2023 WL 8354942, at *1, (D.S.D. Dec. 1, 2023).

In *Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK, the plaintiff in this action, Tiuana Jackson, brought 17 claims against the University of South Dakota, South Dakota Board of Regents, and 15 others. There, Jackson brought many of the same claims she now brings in this lawsuit, including Libel, IIOED, and Abuse of Process. *Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK (Doc. 1). Jackson's factual allegations in that suit, upon which her claims were based, included the following:

**F. The LSAC Charge and Collapse (April 4-9, 2024)**

93. On April 4, 2024, LSAC issued a formal Charge Letter accusing Plaintiff of concealing prior enrollment. A true and correct copy is attached as Exhibit 2. The Charge Letter explicitly cited Plaintiff's YouTube videos as evidence.

94. The Charge Letter contained its own refutation. It stated that in Plaintiff's Howard University application, "under question 7.1 Education, which asks: 'List ALL colleges ... attended,' she listed Northwestern California University School of Law." LSAC charged Plaintiff with concealing the very enrollment she had disclosed.

95. The PDF metadata embedded in the evidence dossier identifies the compiler as "Romey, Lanae N" through the Adobe Acrobat Pro Author field. Romey served as Senior Secretary at USD Knudson School of Law from January 2018 through August 2020, working alongside Defendant Ulrich. At the time she compiled the dossier, Romey was employed by the State of South Dakota.

96. On April 5, 2024, Plaintiff submitted her written response to LSAC with documentation of her August 3, 2023 amendment. On April 9, 2024, Ulrich emailed LSAC requesting withdrawal: "Hi, Vicki! The student has sent us a copy of the amendment letter which we never received." Plaintiff's student file — in Ulrich's own office — contained the amendment. LSAC withdrew the charge that same day. (Ex. 3.)

97. The charge was active for five days. The harm is permanent. Under LSAC Rules Section 7(a), the filing activated automatic data withholding and triggered nationwide disclosure to every law school to which Plaintiff had applied. Under *In re Application of Widdison*, 539 N.W.2d 671, 674 (S.D. 1995), Jackson must disclose the proceeding on every bar application regardless of outcome.

*Id.* And, Plaintiff's Count VIII alleged libel per se against Katey Ulrich for publishing "false statements" about Plaintiff in the LSAC referral. *Id.* at ¶¶ 159-161.

In the present action, Plaintiff alleged the same set of facts as in the *Univ. of S. Dakota, et al.* case at Doc. 5, ¶¶ 23-34. This Court in *Jackson v. Univ. of S. Dakota, et al.* dismissed Jackson's Complaint, in its entirety, and with prejudice. No. 4:26-CIV-04069-CBK, 2026 WL 1283874 (D.S.D. May 11, 2026). This included the Libel Per Se claim, Tortious Interference with Prospective Economic Advantage claim (which also was allegedly based, in part, on the LSAC referral), and the Malicious Prosecution claim (which also was allegedly based, in part, on the LSAC referral). *See Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK (Doc. 1).

The *Jackson v. Univ. of S. Dakota, et al.* case was dismissed on its merits. In the present action, Plaintiff seeks to contest the same matter that she has already had the opportunity to litigate. Her pressing forward with the present action despite this Court's dismissal in *Jackson v. Univ. of S. Dakota, et al.* is a waste of judicial resources and is incurring unnecessary expenses for the Defendants. Here, Plaintiff has presented some of the same issues already adjudicated in *Univ. of S. Dakota, et al.*: an allegedly improper referral from USD Law, and the alleged mishandling of the referral by LSAC because it was based on untrue information in the referral. Further, Plaintiff asserts here some of the same claims as she did in the *Univ. of S. Dakota, et al.* case; namely, libel and tortious interference.

Therefore, in the alternative, Plaintiff should be estopped or barred from bringing the claims in the present action because the issues raised in her Complaint have already been actually and necessarily determined by this Court. And, Defendants request that the Court take judicial notice of its May 11, 2026 Memorandum Opinion and Order in *Jackson v. Univ. of S. Dakota, et al.*, No. 4:26-CIV-04069-CBK, 2026 WL 1283874 in deciding the present Motion.

23

## XVI.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court: (a) dismiss Plaintiff's Complaint in its entirety for failure to state any claim upon which relief can be granted; or alternatively (b) dismiss all claims against Kettles and Whitesell for the additional reason that this Court lacks personal jurisdiction over Whitesell and Kettles.

Dated this 16th day of July, 2026.

Respectfully Submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/ Sarah Collins*
Sarah Collins
Berkley F. Fierro
1136 Jackson Blvd., Ste. C
Rapid City, SD 57702
Email: scollins@grsm.com
Email: bfierro@grsm.com
cc: hslowik@grsm.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 16, 2026, I electronically filed the foregoing Reply Brief with the Clerk of the Court using the CM/ECF system, which will automatically send electronic service of the same to the Plaintiff (pursuant to Doc. 4).

By: */s/ Sarah Collins*
Sarah Collins

24